UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

-----------------------------------------------------------------------X
PENN MARITIME, INC.

                Plaintiff,

-against -

RHODES ELECTRONIC SERVICES, INC.;
RHODES ELECTRONICS, INC.; RHODES
SALES & RENTALS, INC.; NAVICO, INC.;
OSG CONSTITUTION, LLC; OSG 400, LLC; and
OSG SHIP MANGEMENT., INC.,

                Defendants.
-----------------------------------------------------------------------X

CIVIL ACTION

NO. 11 cv 2761
SECTION "C" (4)

Hon. Helen G. Berrigan
Mag. Judge Karen Wells Roby

**AFFIDAVIT OF**
**JAMES M. KENNY**

## AFFIDAVIT OF JAMES M. KENNY IN OPPOSITION TO MOTION TO SEVER AND TRANSFER

STATE OF NEW YORK            )
                                                   ss:
COUNTY OF NEW YORK         )

James M. Kenny, being duly sworn, deposes and says:

1.     I am an attorney at law duly admitted to practice in the States of New York and New Jersey and admitted *pro hac vice* in this action by Order dated January 6, 2012. I am the attorney for the plaintiff Penn Maritime, Inc. ("Penn") in this maritime collision case. I am fully familiar with the facts and circumstances surrounding this maritime collision case and the events leading to the filing of this action in the United States District Court for the Eastern District of Louisiana, and, the filing of an action by OSG 400 LLC and the OSG Constitution LLC in the United States District Court for the Eastern District of Pennsylvania at Philadelphia. (A copy of

that Complaint is annexed to OSG's motion as Exhibit 1. See Doc. No. 36.) The plaintiffs in the Pennsylvania action are the owners of the tug and barge which collided with the Penn vessls in the Delaware River giving rise to this action.

2.  I make this affidavit of in opposition to OSG Constitution LLC ("OSG Constitution"), OSG 400 LLC's ("OSG 400") and OSG Ship Management, Inc.'s ("OSGM") motion to sever and transfer.

### OSG Ship Management, Inc. is the enterprise that controlled the OSG vessels. OSG Ship Management, Inc. was the operator of OSG 400 and OSG Constitution and does business in this jurisdiction.

3.  The defendants OSG Constitution, LLC and OSG 400, LLC are the registered owners of the articulated Tug Constitution and non-self-propelled Barge OSG 400, respectively. (See Declaration of Robert Johnston, Doc 36, Exhibit C, OSG original motion.) Separate corporate ownership for barges is a well-known method in maritime law of limiting legal liability in the marine transportation business pursuant to the Shipowners' Limitation of Liability Act, 46 U.S.C. §§ 181-185, which generally limits liability to the value of the shipowner's vessel and the pending freight in a collision case. In this collision case, Penn's claim of negligent operation against the barge OSG 400, also, obviously involves as a necessary party the defendant OSG Constitution, LLC, the owner of the tug Constitution, which powered the barge. Less obviously, but a likewise necessary party is OSG Ship Management, Inc., the vessel operating company which employed the crew of the tug and barge and manager of the OSG vessel operations. The defendant OSG Ship Management, Inc. is the operator of Delaware Bay Shipping Operations of OSG which was the branch of OSG Ship Management, Inc's operations involved in this collision. (See e-mail of Michael T. Wardwell of OSG Ship Management, Inc., dated March 20, 2012 and annexed hereto as Exhibit 1.)

2

4.     Accordingly, Penn with the court's permission filed the Second Amended Complaint (Doc No. 67, p. 3, paragraph 9) which states:

> At and during all material times hereinafter mentioned, defendant OSG Ship Management, Inc. ("OSG Management") was a corporation organized and existing by virtue of the laws of the United States with an office and place of business at 2 Harbour Place, 302 Knights Run Avenue, Tampa, Florida, and all times hereinafter mentioned was the owner, manager and/or operator of the articulated tug CONSTITUTION and the steel tank barge OSG 400. Vessels owned and/or operated by OSG Management regularly call at ports and/or regularly traverse waters located within the United States District Court for the Eastern District of Louisiana. OSG CONSTITUTION, OSG 400 and OSG Ship Management, Inc. are referred to jointly and severally herein at the "OSG Defendants."

5.     Penn does not dispute that OSG 400 and OSG Constitution were and are not present in this jurisdiction. However, their "sister vessels" (Barge OSG 254 with Tug Intrepid, Barge OSG 252 with Tug Navigator, Barge OSG 244 with Tug Courageous, Barge OSG 242 with Tug Columbia, Barge OSG 214 with Tug Enterprise, Barge OSG 209 with Tug Honour and Barge OSG 192 with Tug Endurance), all operated by OSG Ship Management, Inc., upon information and belief all trade in the waters of the Gulf of Mexico, United States District Court for the Eastern District of Louisiana.

6.     In its memorandum in support of this motion to sever and transfer, defendants state "OSG Ship Management, Inc. was providing ship-management services to OSG 400, LLC and OSG Constitution, LLC." (See Doc. No. 75, Attachment #1, p. 2.) No other further explanation of the business of OSG Ship Management, Inc. as it related to the vessels is offered. "Ship Management Services" is, Penn submits, a euphemism for operator.

7.     There is no explicit argument made that OSG Ship Management, Inc. does not do business in this jurisdiction. In fact, at the time of this collision, OSG Ship Management was not

only the operator of the OSG U.S. flag lightering ATBs in the Delaware River, but also operated seven vessels designated by it as U.S. flag "Gulf ATBs" (see internal OSG Ship Management, Inc., document annexed hereto as Exhibit 2):

**GULF ATBs**

OSG 209 – OSG Honour

OSG 214 – OSG Enterprise

OSG 242 – Columbia

OSG 243 – Independence

OSG 244 – Liberty

OSG 252 – Navigator

OSG 254 – OSG Intrepid

Upon information and belief, some of these vessels regularly transverse the waters of this jurisdiction. As of August 3, 2012 according to MarineTraffic.com, a website that tracks vessel movements, the OSG Enterprise was bound for St. Charles, Louisiana from Charleston, South Carolina. (See MarineTraffic.com website print-out annexed as Exhibit 3.) The same website reveals that the OSG Honour left New Orleans bound for Charleston, South Carolina. (See Exhibit 4.)

8. In addition to the vessels involved in this collision, the ATB Constitution and Barge OSG 400, at the time of the collision OSG operated the Barge OSG 350 and the Barge OSG 192 in the Delaware River Lightering trade.

9. The OSG 400 and ATB Constitution were sold to a foreign buyer in 2011. Therefore, they are no longer listed on OSG's website. OSG's website, presently, lists OSG

Ship Management, Inc. as the operator of both of these Delaware River lighterage vessels, the Barge OSG 350 and the Barge 192. (See Exhibits 5 and 6 annexed hereto.)

10. A Form 10-Q filing of OSG America L.P. dated November 6, 2009 with the Securities and Exchange Commission (See Exhibit 7, p. 2 annexed hereto) states the organization of the related OSG companies as follows:

> On May 14, 2007, Overseas Shipholding Group, Inc. ("OSG) formed OSG America L.P. a Delaware Limited Partnership (the "Partnership") to acquire from OSG a fleet of 18 vessels (ten product carriers, seven ATBs, and one conventional tug-barge unit) and to accept the assignment from OSG of the bareboat charter-in agreements for six product carriers being constructed by Aker Philadelphia Shipyard, Inc.

The filing describes OSG Ship Management, Inc.'s relationship to the OSG companies as follows:

> OSG, through its wholly-owned subsidiary OSG Ship Management Inc., ("OSGM") provides commercial, technical, and administrative services to the Partnership in accordance with related agreements.

To disprove that OSG Ship Management, Inc. was the operator of the Barge OSG 400 and the Tug Constitution, the moving OSG defendants can, in a reply affidavit, show that these agreements do not render OSG Ship Management, Inc. as the vessels' operator.

11. An example of these services is that OSG Ship Management, Inc. ordered the repairs to vessels caused by the collision. (See Invoices of Rhoads Industries, Inc.[1] dated November and December 2010, annexed as Exhibit 8).

12. It is believed that OSG Ship Management, Inc. is the employer of the crewmembers on board the Tug Constitution who were navigating the vessel at the time of the collision. The basis for this belief is the decision of the U.S. District Court for the Eastern

---

[1] No relation to defendants Rhodes Electronic Services, Inc., Rhodes Electronics, Inc. and Rhodes Sales & Rentals, Inc.

District of Michigan, Southern Division, in <u>Alomari v. Overseas Shipholding Group, Inc., OSG Ship Management, Inc. and OSG Bulk Ships, Inc.</u>, 2011 U.S. Dist. Lexis 1319, a crewmember-seaman's personal injury case which notes at *2 OSG Ship Management employed the plaintiff. In the context of this case, the employer of the negligent crewmember operating the OSG vessel, the Tug Constitution, at the time of the collision was OSG Ship Management, Inc.

## Conclusion

13.     The operator of ATB Constitution/OSG 400 was the enterprise of OSG Ship Management, Inc.

## How the case got to New Orleans and why it is the more convenient forum

14.     A cause of this maritime collision appears to be a malfunctioning automatic pilot on the Penn Tug Bluefin. The facts and circumstances giving rise to this collision are as stated in the Report of Investigation (Exhibit 9, p. 2, hereto) arising out of the collision on November 5, 2010 of the Penn Barge No. 80, powered by the ATB Bluefin, and the OSG Barge 400, powered by the ATB OSG Constitution, in the Delaware River in waters bounded by the States of New Jersey and Delaware. According to the Report of Investigation, Section II. Executive Summary, (Exhibit 9, page 3):

> The master of the Bluefin, having just steadied up on his desired course, The master of the Bluefin, having just steadied up on his desired course, engaged the autopilot. <u>Immediately after being engaged, the autopilot veered</u> hard to port (45 degrees over) and the barge PENN No. 80 collided, port bow to port side, with the OSG 400 at between a 35 and 55 degree angle. (Emphasis added.)

\* \* \*

> Following the casualty, the servicing technician's report for the Simrad AP50 Plus System <u>autopilot installed on the BLUEFIN showed a number of system parameters were not set properly</u>. (Emphasis added.)

There exists reason to believe that a cause of the collision was the automatic pilot installed in Louisiana on the Penn Tug Bluefin.

15. With regard to the origin of the case in the United States District Court for the Eastern District of Louisiana, I know that the initial Complaint was filed November 4, 2011 (Doc. No. 1) at the instance of Penn's subrogated hull underwriter Allianz for the recovery of payments made by that underwriter to Penn for the repairs made to the Penn barge arising from the collision. Although Penn was the nominal party plaintiff in that action the real party in interest was Allianz. (See Fed.R.Civ.P. 17.) The reason that the subrogated underwriter insisted that the action be brought in New Orleans was the fact that the automatic pilot which allegedly played the major role in this collision was installed in Louisiana on the Tug Bluefin in July 2010 as part of a new construction at Thoma-Sea Shipbuilders, Lockport, Louisiana. The automatic pilot was manufactured by Navico, Inc. ("Navico") and installed by Rhodes Electronic Services, Inc. ("Rhodes") of Houma, Louisiana at Thomas-Sea Shipbuilding, Lockport, Louisiana. Louisiana has a one year statute of limitations with respect to dereliction actions sounding in negligence and product liability. See La. CC. 3492. As the attorney for Penn I can state that I attempted to have the case brought in Pennsylvania, but it was the decision of the attorneys for the subrogated underwriter Allianz which drafted and finalized the original Complaint that the case should be brought in Louisiana.

16. The connection of the case to the United States District Court for the Eastern District of Pennsylvania is a Letter of Undertaking ("LOU") which was issued by Penn's protection and indemnity underwriter, North of England Mutual Assurance Co. The LOU was

given as a concession to the attorneys for OSG, Palmer Biezup & Henderson, LLP, which practices and has offices in the City of Philadelphia, Pennsylvania. At the outset of this opposition, Penn states that its underwriter has agreed to post the same LOU in the action brought in the United States District Court for the Eastern District of Louisiana. A written proposal to that effect was sent to the Philadelphia attorneys for OSG, Palmer Biezup & Henderson, LLP, on April 9, 2012. (A Copy is annexed hereto as Exhibit 10.)

17. The places of the residence of the Penn crewmen who were on board the vessels at the time of the collision are as follows:

1. Captain John Edvardsen – Point Pleasant, New Jersey
2. Mate Mike J. Washburn – Somerset, Kentucky
3. Mate Earl Grey III Webb – Talahassee, Florida
4. Engineer Robert Albers – Jacksonville, Florida
5. Tankerman Kenneth Womack – Rayville, Louisiana
6. Tankerman Gary Sharp -- Windsor, Virginia
7. Tankerman Wayne Wooten – Greenbay, Virginia

16. It is suggested that OSG should be ordered to produce the names of its witnesses and their addresses and they would reveal that they are not located within the District of Pennsylvania. OSG should produce the agreement pursuant to which it provides commercial, technical and administrative services to the OSG fleet. In addition, OSG should be ordered to name the OSG vessels which trade in the waters of this jurisdiction. Hopefully, a reply filing will shed light on this.

_____
JAMES M. KENNY

Sworn to before me this 7th day of August, 2012

_____
**Notary Public**

Kenneth Danielsen
Notary Public, State of New York
No. 02DA6212907
Qualified in Nassau County
Commission Expires October 26, 2013